PENMAN *v.* AYERS

[No. 99, September Term, 1959.]

*Decided December 15, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John M. Robb* for the appellant.

*James S. Getty* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The question here is this: can an illegitimate son inherit real and personal property from his deceased half-brother who was a legitimate son of the same mother? The Orphans' Court for Allegany County held that he could not, the Circuit Court for that County affirmed this decision, and the illegitimate son, Andrew Penman, took this appeal. The appellee, George W. Ayers, is the full, legitimate brother of the decedent.

The case was submitted on an agreed statement of facts which showed that the decedent, William J. Ayers, died, intestate, owning real and personal property valued in all at about $25,000; that he was one of three children of Sarah Penman Ayers by her husband, John Ayers, that both parents are deceased; that the decedent's sister also predeceased him, without issue; that at the decedent's death he was single and without children; that he was survived by his full, legitimate brother, the appellee, and by the appellant; that the appellant, Penman, was the illegitimate son of Sarah Penman by an unknown father, born before the marriage of Sarah Penman; that the appellant was raised as a member of the family and was treated by John Ayers like his own children; that the children all looked upon one another as brothers and sisters, though Andrew Penman was never legally adopted; that Penman worked in the coal mines with John Ayers; and that after the death of John Ayers, Penman continued living with the others and working in the mines to help support the family.

The converse of the instant case was presented in *Miller v. Stewart,* 8 Gill. 128. There an illegitimate son died intestate and without issue, leaving surviving him his mother and three legitimate children of hers by her deceased husband (who was not the father of the illegitimate decedent). It was held that neither the mother nor her legitimate children had any claim to his estate under Ch. 156 of the Acts of 1825, which was then in force as originally enacted. It provided that "the illegitimate child or children of any female, and the issue of any such illegitimate child or children be, and they are hereby declared to be able and capable in law to take and inherit

both real and personal estate from their mother, or from each other, or from the descendants of each other, as the case may be, in like manner as if born in lawful wedlock; * * *". The portion which we have not quoted was a proviso protecting the rights of those legitimated under Sec. 7 of Ch. 191 of the Acts of 1820. The latter statute, a re-enactment of Sec. 7 of Ch. 45 of the Acts of 1786, provided that "if any man shall have a child or children by any woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall in virtue of such marriage and acknowledgment, be hereby legitimated, and capable in law to inherit and transmit inheritance, as if born in wedlock." [1]

In *Miller v. Stewart, supra,* the statutory relaxation of the common law rules was not extended by implication. The Court said (at p. 132): "They [illegitimate children] may not take from the legitimate, neither can the legitimate inherit from them. There is no reciprocity intended, and between these, the Act recognizes no such relation as brother and sister." After stating the limited scope of the statutory abatement of the rigor of the common law, and pointing out that the words of the Act were plain and unambiguous, the Court went on to say (pp. 132-133): "The words expressly restrict it to the relation there stated among the illegitimates, excluding the legitimates from any participation. * * * The mother is incompetent, unless the disqualification has been removed by marriage, and the child legitimated for all purposes; and the brother and sisters, born in wedlock and legitimate, have no claim to fraternity with the illegitimate, to whom the terms of the Act exclusively refer. That the illegitimate cannot claim, under this Act, to take the estate of a legitimate brother, has been heretofore decided in this Court, in the case of *Medcalf* vs. *Daley and Jones,* (1845, manuscript,) and the converse of the proposition being equally true under the Act, the decree * * * is affirmed."

---

1. This statute was codified without any material change as Sec. 29 of Article 47 ("Inheritance") of the Code of 1860 and as Sec. 29 of Article 46 (also entitled "Inheritance") of the Code of 1888, and continues substantially unchanged as Sec. 6 of Article 46 of the 1957 Code.

No opinion appears to have been filed in *Medcalf v. Daley and Jones,* but our records show that this Court affirmed a decree which had the effect stated. Unless some statutory change has supervened, that case, as approved in *Miller v. Stewart,* is directly in point here.

Ch. 156 of the Acts of 1825 was codified without substantial change in the Code of 1860 as Section 30 of Article 47 (Inheritance), but the proviso at the end was omitted—doubtless because it was thought unnecessary in the light of Sec. 29 of the same Article, which was derived from Sec. 7 of Ch. 191 of the Acts of 1820. The first portion of Ch. 156 was also incorporated in substance (omitting the words "and inherit") in the Code of 1860 as Sec. 135 of Article 93 (Testamentary Law) as one of the sections dealing with the distribution of the surplus personal estate of intestates. The Code of 1860, prepared in accordance with the directions contained in Sec. 17 of Article III of the Constitution of 1851, was adopted by Ch. 1 of the Acts of 1860, and was the first official Code of the State. The two volumes thereof containing, respectively, the Public General Laws and the Public Local Laws of the State were "adopted, in lieu of and as a substitute for all the Public General Laws, and the Public Local Laws, heretofore passed by the Legislature of Maryland."

Section 30 of Article 47 of the Code of 1860 was amended by Ch. 199 of the Acts of 1868. As so amended it was incorporated with only minor changes in text and punctuation as Section 30 of Article 46 of the Code of 1888 and it has continued unchanged since then. It now constitutes Sec. 7 of Article 46 of the 1957 Code, which reads as follows:

> "The illegitimate child or children of any female, and the issue of any such illegitimate child or children shall be capable in law to take and inherit both real and personal estate from their mother, or from each other, or from the descendants of each other, as the case may be; and where such illegitimate child or children shall die, leaving no descendants, or brothers or sisters, or the descendants of such broth-

ers and sisters, then and in that case, the mother of such illegitimate child or children, if living, shall inherit both real and personal estate from such illegitimate child or children; and if the mother be dead, then and in that case the heirs at law of the mother shall inherit the real and personal estate of such illegitimate child or children in like manner as if such illegitimate child or children had been born in lawful wedlock."

Down to the first semi-colon there is no change from Sec. 30 of Article 47 of the Code of 1860. The words "in like manner as if born in wedlock" which followed "as the case may be" have been deleted, and the remainder of the present Sec. 7 of Article 46 was added by Ch. 199 of the Acts of 1868. (The changes in punctuation made by the Code of 1888 do not appear to have changed the meaning of the 1868 amendment.)

For some reason—perhaps oversight—when Sec. 30 of Article 47 of the Code of 1860 was amended in 1868, no corresponding amendment was made in Sec. 135 of Article 93 of the same Code. Both of those Sections were included in the Code of 1888—the former as Sec. 30 of Article 46 and the latter as Sec. 134 of Article 93. Sec. 134 (Sec. 150 of Article 93 of the 1957 Code) is only one of a number of sections of Article 93 dealing with the distribution of personal property. Sec. 30 of Article 46 of the Code of 1888 (Sec. 7 of Article 46 of the 1957 Code) is in terms applicable to personal property as well as to real property; and notwithstanding the Article of the Code in which it is placed, it is to be construed with pertinent Sections of Article 93 dealing with distribution. *Reese v. Starner,* 106 Md. 50, 66 A. 443; *Rowe v. Cullen,* 177 Md. 357, 9 A. 2d 585. Cf. *Barron v. Zimmerman,* 117 Md. 296, 83 A. 258, in which an illegitimate child was held entitled to inherit, as the child of his then deceased mother, real estate which had belonged to the mother's sister. The case actually turned on Sections of Article 46 of the 1888 Code, the Inheritance Article, but Judge Urner referred to Sec. 127 of the 1904 Code (the relevant portion of which is in Sec. 128 in the 1888 Code and Sec. 144 in the

1957 Code) of Article 93 in construing the directly pertinent Section of Article 46.

This Court has adopted and adhered to the rule that the common law disabilities of illegitimates are relaxed or removed only to the extent that the Legislature has seen fit to remove them by statute. *Miller v. Stewart, supra* (rule stated and applied) ; *Barron v. Zimmerman, supra,* 117 Md. at 302, (rule restated but not found controlling). See also *Scott v. Independent Ice Co.,* 135 Md. 343, 109 A. 117, decided in 1919 (illegitimate child not entitled to benefits of Workmen's Compensation Act upon death of father; prior to amendment) ; *Washington, B. & A. R. R. Co. v. State, Use of Hall,* 136 Md. 103, 119, 111 A. 164, decided in 1920 (illegitimate child not entitled to recover for death of father by wrongful act). The Workmen's Compensation Act was amended by Ch. 456 of the Acts of 1920 to permit an award for the benefit of an illegitimate child under stated circumstances. The pertinent portion of Death by Wrongful Act statute (Code (1957), Art. 67, Sec. 4) was amended by Ch. 38 of the Acts of 1937, to permit an illegitimate child to recover for the death of his mother, and vice versa.

*Rowe v. Cullen, supra,* contains a passage (177 Md. at 361-362) stating that the severity of the rules of the common law has been relaxed nearly everywhere and that ordinarily by statute, but in at least one instance by judicial decision, the trend of the law has been to give to illegitimate children the status and privileges of legitimate children, except where that policy would affect the permanence and dignity of the institution of marriage, or the traditional rights of children born in lawful wedlock. That passage is relied upon by the appellant in urging us, by judicial decision, to abrogate the common law. We do not think that it leads to the conclusion which he urges. The adoption of the appellant's argument would, we think, in the instant case, affect the traditional rights of a child born in lawful wedlock, and the actual decision in *Rowe v. Cullen* turns on statutory construction.

The question here, as in *Rowe v. Cullen,* is one of statutory construction. We are unable to agree with the appellant that the changes made by Ch. 199 of the Acts of 1868 either stand-

ing alone or when read in conjunction with the provisions relating to distribution effect a reversal of the rule of *Medcalf v. Daley and Jones* as stated in *Miller v. Stewart,* both above referred to. As we interpret that statute it opened the door for the transmission of property of an illegitimate intestate decedent to his mother, if living, or if not to her legitimate children; but it did not open the door the other way so as to permit the transmission of property from the legitimate children to the illegitimate. True, the statute permits the transfer of intestate property of the mother's kin to an illegitimate son taking by right of representation in the place of the deceased mother (*Barron v. Zimmerman, supra*), but that is not the case here. The surviving legitimate brother takes directly from the intestate and we see no basis upon which the surviving illegitimate could be regarded as taking his mother's share by representation.

Nor can we accept the appellant's argument that since he is a brother of the half blood and that under Code (1957), Art. 93, Sec. 145, there is no distinction between brothers of the half blood and of the whole blood, that he is entitled to share equally with the appellee, the full brother of the decedent. In our opinion, the statute, Art. 46, Sec. 7, does not make an illegitimate son a brother or half brother of a legitimate child of the common mother. That illegitimates may take as between themselves is clear, but the statute does not purport to be a legitimation statute, as Sec. 6 of the same Article clearly is. The Legislature has moved only in a limited way to remove the disabilities of illegitimates. See the Workmen's Compensation Act and the Death by Wrongful Act Article of the Code, already cited. It has gone far in the direction of liberalization in the definition of "child" written into Art. 1, Sec. 16 of the Code (1957), enacted by Ch. 74 of the Acts of 1937, but even there it has excepted "matters of inheritance, descent or distribution of real and personal property * * *." When it wishes to go the whole way in such matters, it employs apt language to do so. See Code (1957), Art. 46, Sec. 6, *supra,* and *ibid.,* Art. 16, Secs. 78 (b), 78 (c) and 80, dealing with the effect of adoption.

In the analogous provisions of Art. 93 of the Code dealing

with the right to administer upon the estate of a decedent, "sister" has been held to mean a legitimate sister, and of course the same would be true as to a brother. See *Richardson v. Smith*, 80 Md. 94, 97, 30 A. 570.

There are some cases in other jurisdictions which have held that an illegitimate can inherit from his mother's legitimate children. Cases upholding or denying the right are collected in a note in 60 A.L.R. 2d 1182, which supersedes on this question two prior annotations in 24 A.L.R. 582 and 83 A.L.R. 1334. In the summary in the most recent note it is stated that: "At common law an illegitimate cannot inherit from his mother's legitimate children, and in the absence of statute this is the law in this country, except possibly in Connecticut." The differing results of the cases depend upon different statutes and the construction thereof. Some cases have stressed (as did *Miller v. Stewart, supra*) the rule that statutes in derogation of the common law are to be strictly construed (a rule recently reaffirmed by this Court in a Death by Wrongful Act case, *McKeon v. State, Use of Conrad*, 211 Md. 437, 443, 127 A. 2d 635) ; others emphasize the remedial character of such statutes. This Court has, we believe, consistently given full recognition to the remedial character of statutes dealing with the rights of illegitimates, and has given full effect to their terms, but has not extended such statutes by implication. See, for example, *Hawbecker v. Hawbecker*, 43 Md. 516; *Dilworth v. Dilworth*, 134 Md. 589, 108 A. 165; and *Rowe v. Cullen, supra;* in each of which the Court refused to read in any exception where the Legislature had stated none. On the other hand, in considering the claim of an illegitimate under the Workmen's Compensation Act in its original form in *Scott v. Independent Ice Co., supra*, the Court (135 Md. at 350) declined to "disregard all rules of construction, if necessary to avoid injurious results in what appear to be hard cases * * *."

We do not think that any extended discussion of the varying statutes and decisions of other States would be of much assistance in the construction of our own statute. It is interesting to note that the Supreme Court of Illinois, following a change in the statute of that State, no longer follows

*Morrow v. Morrow,* 289 Ill. 135, 124 N. E. 386, which was heavily relied upon by the appellant in the instant case. See *Spencer v. Burns,* 413 Ill. 240, 108 N. E. 2d 413.

Between the times of decision of *Morrow v. Morrow* and *Spencer v. Burns* the Illinois statute was amended in some respects, one of which was the elimination of a clause which made the illegitimate the heir "of any person from whom its mother might have inherited, if living". It was held that by reason of the elimination of this clause the husband and the surviving legitimate brother of the decedent took the estate to the exclusion of the surviving illegitimate half brother and of the issue of the deceased illegitimate sister. In other words, the change in the statute eliminated the basis upon which illegitimate brothers and sisters had previously been held entitled to inherit from legitimate children of a common mother. Thus, though the statute according the illegitimates some relaxation of common law disabilities was still remedial, its scope was held to have been narrowed.

*In re Klingaman's Estate,* 128 A. 2d 311 (Del. 1957), the Supreme Court of Delaware, disapproving a prior decision of the Court of Chancery, held that an illegitimate daughter could inherit from her mother's legitimate son. This case, in an able opinion by Chief Justice Southerland, proceeded on the theory of liberal construction of remedial statutes and found reciprocity implied in the Delaware statutes from the provision under which the heirs of the mother could inherit through her from her illegitimate child. The history of the Delaware statutes differs somewhat from ours, but this alone would not seem a controlling distinction. Delaware did not, however, have a prior decision of its highest court on the question at issue. In this respect, we think our situation is materially different.

For that reason and for others which we have already stated we do not think a like interpretation of our statutes is warranted. We think that our Legislature has not manifested an intention to establish reciprocity, that on the contrary the language of Sec. 7 of Art. 46 of our Code manifests an intention to go so far and no further in its relaxation of the common law rules and that it intended to open the door only

to the limited extent stated, not to swing the door on double hinges opening either way, and that a consideration of other statutes bearing upon the extent of legislative relaxation of common law rigor or harshness relating to illegitimate accords with our view that the Legislature has not undertaken a wholesale removal of the obstacles to inheritance which the common law created. Whether further amelioration of the disabilities imposed upon illegitimates should be made, is a problem which we think is for the determination of the Legislature.

Our conclusion is that the rule stated in *Miller v. Stewart, supra,* has not been altered by statute and that the law governing this case is succinctly and correctly stated by Judge Sykes in his work on *Maryland Probate Law and Practice,* Vol. 1, § 162, p. 160: "An illegitimate child cannot inherit from a legitimate brother."

*Order affirmed, with costs.*